**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAMMY STRAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-734 |
| vs. | ) |
| | ) |
| EDDIE LEVERT *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Upon consideration of the Motion to Dismiss submitted by Defendants Philadelphia International Records, Assorted Music, Inc., Gamble-Huff Productions, Kenneth Gamble, Leon Huff and Chuck Gamble, the Memorandum of Law in support thereof, any opposition thereto, and the entire record herein, it is, this _____ day of 2007, hereby

ORDERED, that the Motion shall be, and the same hereby is, GRANTED; and it is further

ORDERED, that the Complaint is dismissed with prejudice; and it is further

ORDERED, that Defendants shall have ten days from the date of this Order to submit to Plaintiff a statement of their fees and costs in the defense of this matter; and it is further

ORDERED, that Plaintiff shall remit payment to Defendants for their legal fees and expenses within ten days of receipt of such statement.

_____
United States District Judge

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMMY STRAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 07-734 |
| vs. ) | |
| ) | |
| EDDIE LEVERT *et al.*, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS PHILADELPHIA INTERNATIONAL RECORDS, ASSORTED MUSIC, INC., GAMBLE-HUFF PRODUCTIONS, KENNETH GAMBLE, LEON HUFF, AND CHUCK GAMBLE'S MOTION TO DISMISS COMPLAINT

Defendants Philadelphia International Records, Assorted Music, Inc., Gamble-Huff

Productions, Kenneth Gamble, Leon Huff, and Chuck Gamble (the "PIR Defendants"), by and

through counsel and pursuant to Rule 12(b), move the Court for an order dismissing the

Complaint in its entirety. As explained more fully in the supporting Memorandum of Law, the

Court does not have subject matter jurisdiction to entertain this lawsuit, and plaintiff's claims are

time-barred. Additionally, the Complaint fails to state a claim for fraudulent misrepresentation,

and it fails to state claims against defendants Kenneth Gamble, Chuck Gamble, or Leon Huff.

Respectfully submitted,

_____/s/_____

Denis J. Lawler (Bar No. 17154)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel: (215) 569-5500
Fax: (215) 569-5555
Email: lawler@blankrome.com

Dated: April 26, 2007                    *Counsel for the PIR Defendants*

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMMY STRAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-734 |
| vs. | ) |
| | ) |
| EDDIE LEVERT *et al.*, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS SUBMITTED BY DEFENDANTS PHILADELPHIA
### INTERNATIONAL RECORDS, ASSORTED MUSIC, INC., GAMBLE-HUFF
### PRODUCTIONS, KENNETH GAMBLE, LEON HUFF AND CHUCK GAMBLE

By this lawsuit, plaintiff Sammy Strain seeks to right wrongs that – according to the

Complaint – occurred thirty years ago. But the Complaint is too little, too late. As described

more fully below, the Court lacks jurisdiction to hear plaintiff's claims, and the Complaint must

be dismissed on that basis alone. Moreover, even if the Court did have jurisdiction to entertain

this dispute, plaintiff's claims are significantly time-barred and otherwise flawed, thus providing

independent, but no less conclusive, bases for dismissal.

### Background

Even the Complaint concedes that this lawsuit arises out of facts and circumstances that

occurred thirty or more years ago. On January 15, 1972, a musical group called The O'Jays –

which consisted of defendants Eddie Levert and Walter Williams, and the late William Powell –

executed a recording contract with defendant Gamble-Huff Productions (the "1972 Contract").

The 1972 Contract granted to The O'Jays (*i.e.* Levert, Williams and Powell), collectively, the

right to receive certain royalty payments. *See* Complaint at Ex. A ¶¶ 5, 7 & 24. The royalties

provided for by the 1972 Contract were "intended to include provision for all performers" and each of the performers agreed to "hold [Gamble-Huff Productions] harmless from any claims for royalties in excess of those herein provided." *Id.* ¶ 24. The 1972 Contract was modified on August 25, 1975, but it continued to address The O'Jays collectively. *See* Complaint at Ex. A.

The following year, 1976, Mr. Powell became terminally ill, which prompted The O'Jays to invite plaintiff Sammy Strain to sing with the group.

On March 15, 1977, defendants Levert and Williams, doing business as "The O'Jays," entered into a new recording contract – this time with defendant Assorted Music, Inc. d/b/a Philadelphia International Records (the "1977 Contract"). *See* Complaint at Ex. B. Like its predecessor, the 1977 Contract set forth the basis upon which Levert and Williams (d/b/a "The O'Jays") would be compensated for their services, and it identified Mr. Strain as somebody who would perform with the group. As part of the 1977 Contract, defendants Levert and Williams specifically agreed that they alone would be responsible for compensating Mr. Strain for his services, and they agreed to indemnify the PIR Defendants from any claims that Mr. Strain might thereafter assert. *See id.* ¶ 34.

Concurrently, Mr. Strain entered into both an "Employment Agreement" and a separate letter agreement by which he (i) committed to perform as a member of The O'Jays, (ii) agreed to be bound by the terms of the 1977 Contract, and (iii) agreed to look solely to The O'Jays (*i.e.* Levert and Williams) for compensation for his services. *See* Exhibits A and B hereto.[1]

---

[1] These documents were omitted from the Complaint, but the Court need not rely upon them to grant the PIR Defendants' Motion to Dismiss. They are appended here to complete the chronology, and because they conclusively demonstrate that the PIR Defendants never had an obligation to compensate Mr. Strain. Thus, should the Motion to Dismiss be denied, it will be followed by a motion for summary judgment as there are no genuine issues of material fact, and the documents establish that the PIR Defendants are entitled to judgment as a matter of law. *See generally* Fed.R.Civ.P. 56.

3

Then, on March 2, 1979, Assorted Music d/b/a Philadelphia International Records entered into a new contract with The O'Jays (*i.e.* defendants Levert and Williams) pursuant to which The O'Jays agreed to perform certain services in exchange for certain compensation, including royalty payments (the "1979 Contract"). See Complaint at Ex. C. The 1979 Contract was followed by another contract between Assorted Music and The O'Jays (*i.e.* defendants Levert and Williams), dated June 27, 1980, which modified certain terms of the 1979 Contract. *See* Complaint at Ex. D. The modifications are not germane to this lawsuit.

On October 5, 1982, a contract modification was executed among plaintiff and defendants Levert and Williams on the one hand, and Assorted Music d/b/a Philadelphia International Records on the other hand (the "1982 Contract Modification"). *See* Complaint at Ex. E. Like its predecessors, the 1982 Contract Modification called for the payment of certain royalties to The O'Jays collectively. *Id*.

Finally, on December 18, 1984, plaintiff and defendants Levert and Williams entered into a further contract modification with Assorted Music in which Strain agreed, among other things, that he had "no outstanding claims against [Assorted] …" *See* Complaint at Ex. F, ¶ 3(A).

Thus, in summary, the Complaint itself alleges that:

(i)     Mr. Strain began singing with The O'Jays in 1976;

(ii)    Mr. Strain's right to royalties or other compensation accrued, if at all, in 1976;

(iii)   Mr. Strain never received royalties;

(iv)    Mr. Strain took no action in the intervening thirty years to pursue his asserted right to receive royalty payments.

*See generally* Complaint. These points – all allegations of the Complaint itself – are dispositive of the PIR Defendants' Motion to Dismiss.

4

## Argument

### I. Standard of Review

The purpose of a motion to dismiss is to "test the sufficiency of the complaint." *Gilbert v. Feld*, 788 F. Supp. 854, 858 (E.D. Pa. 1992). The Court must accept all facts alleged in the complaint as true. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). "Conclusory allegations of law, unsupported conclusions and unwarranted inferences," however, "need not be accepted as true." *Flanagan v. Shively*, 783 F. Supp. 922, 927 (M.D. Pa.), *aff'd*, 980 F.2d 722 (3d Cir. 1992). In order to survive a motion to dismiss, the plaintiff must present facts that allege each required element of the claims set forth in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

### II. The Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction.

"There is a presumption against the existence of federal jurisdiction, and the party invoking the federal court's jurisdiction bears the burden of proof." *Blackwood, Inc. v. Ventresca*, 2002 U.S. Dist. LEXIS 24745, at *21 (E.D. Pa. Dec. 19, 2002). Here, the Complaint asserts that the Court has jurisdiction based on diversity of citizenship and the presentation of a federal question. As a matter of law, however, the Complaint is wrong on both points.

First, the suit lacks complete diversity among the litigants. As explained in the annexed Affidavit of Leon Huff, defendant Huff is a resident of the State of New Jersey -- the same state of which plaintiff Strain is a resident. *See* Exhibit C.[2] This failure of diversity between plaintiff and defendant Huff defeats diversity jurisdiction with respect to all defendants because it defeats complete diversity among the parties. *See Financial Software Sys.*, 84 F. Supp. 2d at 597.

---

[2] The Court "is free to consider and weigh evidence outside the pleadings to resolve factual issues bearing on the jurisdictional issue." *Financial Software Sys. v. First Union Nat'l Bank*, 84 F. Supp. 2d 594, 596-97 (E.D. Pa. 1999).

5

Second, the Complaint fails to state a basis for federal question jurisdiction, because it fails to state any cause of action arising under any federal statute or right. *See* 28 U.S.C. § 1331. The only allegation that even hints of a federal question is Count VI, which alleges that defendants Assorted Music, PIR, Levert and Williams breached a copyright license granted by plaintiff in the 1977 Contract and the 1979 Contract. *See* Complaint ¶¶ 37-44. Even if true, that is a claim for breach of contract, which is not a federal question. Indeed, "[a] mere allegation of breach of contract does not create federal jurisdiction, even if the contract involves copyright." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 584 (9th Cir. 1993). Thus, simply referencing the Copyright Act does not create a federal question where, as here, the complaint fails to assert a cognizable federal cause of action. *See Davis v. W. Psychiatric Inst. & Clinic*, 146 Fed. Appx. 563, 564 (3d Cir. 2005) (dismissing complaint for lack of jurisdiction where complaint generally referenced a federal crime, but failed to "set forth the elements of any cause of action under any federal statute.").

Under these circumstances – where the Court lacks both diversity jurisdiction and federal question jurisdiction – the Complaint must be dismissed in its entirety. *See Patterson v. Sherrill*, 1996 U.S. Dist. LEXIS 16799, at *2 (E.D. Pa. Oct. 15, 1996) (dismissing case for lack of jurisdiction where neither diversity nor federal question jurisdiction existed). And, even if the Court were to conclude that Count VI does state a basis for federal question jurisdiction, it nevertheless should dismiss the Complaint as to defendants Gamble, Huff, Gamble and Gamble-Huff Productions because Count VI does not allege any wrongful conduct by any of them, *see* Complaint ¶¶ 37-44, and because, as discussed *infra*, there is not complete diversity of citizenship.

6

**III. The Complaint Should be Dismissed because Plainitff's Claims are Barred by the Applicable Statutes of Limitations.**

The Court should dismiss the Complaint on the basis that plaintiff's claims are barred by the applicable statutes of limitations. The Complaint asserts six claims for relief, which are subject to different statutes of limitations. Specifically:

- Fraudulent Misrepresentation (Count I) is subject to a two-year statute of limitations. *See* 42 Pa.C.S. § 5524;

- Breach of Contract (Counts II & III) is subject to a four-year statute of limitations; *see* 42 Pa.C.S. § 5525;

- Conversion (Count IV) is subject to a two-year statute of limitations; *see* 42 Pa.C.S. § 5524; *Menichini v. Grant*, 995 F.2d 1224, 1229 (3d Cir. 1993);

- Unjust Enrichment (Count V) is subject to a four-year statute of limitations; *see* 42 Pa.C.S. § 5525; *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997); and

- Breach of Copyright License (Count VI) is subject to the four-year statute of limitations applicable to contract claims; 42 Pa.C.S. § 5525;[3]

The statute of limitations begins to run from the moment a cause of action accrues. Pa.C.S. § 5502; *see also Lake v. Arnold*, 232 F.3d 360, 366 (3d Cir. 2000) (defining time of accrual as "the first significant event necessary to make the claim suable") (internal citations omitted); *City of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 121 (3d Cir. 1993) (same); *Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985) (same); *Bolender v. Farm Bureau Mutual Ins. Co.*, 474 F.2d 1360, 1362-63 (3d Cir. 1973) ("cause of action accrues at the

---

[3] Even if Count VI were construed to be a federal copyright law claim, which it is not, it would be subject to a three-year statute of limitations. *See* 17 U.S.C. § 507.

7

moment the party has a legal right to sue."); *Washington v. Peavy*, 2006 U.S. Dist. LEXIS 23480, at \*4-5 (E.D. Pa. Apr. 25, 2006) (same); *Mishra v. Fox*, 2005 U.S. Dist. LEXIS 33682, at \*6 (W.D. Pa. Dec. 19, 2005), *aff'd*, 197 Fed. Appx. 167 (3d cir. 2006) (statute begins to run when cause of action accrues).

Statutes of limitations are strictly enforced, and there are few circumstances in which the running of a limitations period may be tolled. "[L]ack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. ...It is the duty of the party asserting the cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *DIRECTV, Inc. v. Rodkey*, 369 F. Supp. 2d 587, 603 (W.D. Pa. 2005) (*quoting DiCicco v. Willow Grove Bank*, 308 F. Supp. 2d 528, 534 (E.D. Pa. 2004)) (additional internal citations omitted). In *DIRECTV*, the Court defined "reasonable diligence' as "a reasonable effort to discover the cause of injury under the facts and circumstance[s] present in the case." *DIRECTV, supra,* at 604 (*quoting Baumgart v. Keene Building Prods. Corp.*, 666 A.2d 238 (Pa. 1995)). Whether a plaintiff has exercised reasonable diligence is measured by an objective standard and centers upon whether he has demonstrated "qualities of attention, knowledge, intelligence and judgment to which society requires of its members for the protection of their own interest and the interests of others." *DIRECTV, supra*, at 604 (*quoting Burnside v. Abbott Labs.*, 505 A.2d 973, 988 (Pa. 1985)). The plaintiff maintains the burden of "alleg[ing] and prov[ing] facts which show that he made reasonable efforts to protect his interests and which explain why he was unable to discover the operative facts for his cause of action sooner than he did." *Bealer v. Mut. Fire, Marine & Inland Ins. Co*, 2006 U.S. Dist. LEXIS 26177, at \*15-16 (E.D. Pa. May 3, 2006) (*quoting Bickell v. Stein*, 435 A.2d 610, 612 (Pa. Super. Ct. 1981)).

8

Where plaintiffs have failed to act with due diligence in pursuing their claims in a timely manner, their claims have been properly dismissed. *See, e.g., Colletti v. N.J. Transit Corp.*, 50 Fed. Appx. 513, 518 (3d Cir. 2002) (refusing to apply equitable tolling principles where plaintiff's failure "was caused by his own inattentiveness to the...filing requirement."). In *Colletti*, the Third Circuit delineated a limited set of circumstances in which equitable tolling is appropriate: (1) if the defendant has actively misled the plaintiff; (2) if the plaintiff has "'in some extraordinary way' been prevented from asserting his rights;" and (3) if the plaintiff has timely pursued his rights in the wrong forum. *Id.* But "[t]he law is clear that courts must be sparing in their use of equitable tolling." *Id. (quoting Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)).

In our case, each of the plaintiff's claims arises out of contracts that – according to the Complaint itself – he entered into, or assented to, beginning more than thirty years ago, and none fewer than twenty-three years ago. *See generally* Complaint. The services that allegedly gave rise to a right of compensation and royalties occurred between 1976 and 1992 and, according to the Complaint itself, plaintiff was *actually aware* of his alleged injuries as long ago as 1977, to wit: "From 1977 until the present day Sammy [Strain] has not been paid 'one dime' in royalty payments[.]" *See* Complaint ¶ 3.[4] Thus, the Court should conclude that each of plaintiff's causes of action accrued as early as 1977, and no later than 1984, such that each is barred by the applicable statute of limitations.[5]

_____

[4] *See also* Complaint ¶ 18 (injury "began in early 1977"); Complaint at ¶¶ 24 & 28 (alleging that contract claims arise out of contracts in effect "for the period extending from March 1977 to date" and "for the period extending from March 1979 to date"); Complaint ¶ 30 (alleging that conversion claim also arises out of the 1977 Contract and the 1979 Contract); Complaint ¶ 35 (conceding that claim for unjust enrichment is time-barred); Complaint ¶ 43 (alleging that breach of copyright license arises out of the 1977 Contract and the 1979 Contract).

[5] Plaintiff may argue that the Complaint alleges a succession of reoccurring violations such that the limitations period started to run anew each time the defendants failed to make a payment that allegedly was due. However, that would be an unreasonable conclusion in light of

9

## IV. The Complaint Should be Dismissed Under the Doctrine of Laches.

Even if the Court were to conclude that that it has jurisdiction to entertain this dispute, and that some or all of plaintiff's claims are not barred by the statute of limitations, it should dismiss the entire Complaint under the doctrine of laches. The Complaint itself asserts that the allegedly wrongful conduct began more than thirty years ago, and that the plaintiff was aware of that allegedly wrongful conduct from the very first day because he never received any royalty payments at all. *See generally* Complaint. The Complaint does not attempt to explain – nor could it – why the plaintiff waited more than thirty years to file this suit.

It is "grossly unreasonable" to wait thirty years to assert one's rights. *Gabster v. Mesaros*, 422 Pa. 116, 220 A.2d 639, 641 (1966). Thus, in *Gabster*, the Court affirmed dismissal based on laches where plaintiffs waited thirty years before bringing a lawsuit that alleged wrongful diversion of church property. The Court noted that it was "patently clear" that "plaintiffs delayed for a grossly unreasonable period of time in asserting the present claim." *Id.* The Court further observed that plaintiffs had offered "no reason for the prolonged delay in properly asserting their claim" and concluded that "if the fact of laches appears on the face of the pleadings, relief may be denied on this ground." *Id.*

The rationale that underlies the defense of laches is simple and straightforward:

> It is an inherent doctrine of equity jurisprudence that nothing less than conscience, good faith, and reasonable diligence can call courts of equity into activity, and that they will not grant aid to a litigant who has negligently slept on his rights and suffered his demand to become stale…It is therefore a general rule that laches or

---

the fact that the Complaint itself alleges that the defendants *never* made *any* royalty payments to the plaintiff. Indeed, the Complaint alleges a single, material breach that occurred in 1977, and that resulted in a single, albeit allegedly compounding, injury. And, even if the Court were to conclude that the Complaint did allege a succession of distinct violations over a thirty-year period, it remains the case that all but those within the past several years would be barred by the applicable statutes of limitations.

10

> staleness of demand constitutes a defense to the enforcement of the right or
> demand so neglected.

*Bonini v. Family Theatre Corp.*, 327 Pa. 273, 194 A. 498, 502 (1937). Accordingly, the courts of Pennsylvania have applied the doctrine of laches in cases involving delays of fewer than thirty years. For example, in *Grange Nat'l Bank v. First Nat'l Bank*, 330 Pa. 1, 3-4, 198 A. 321, 322-23 (1938), the court was confronted with a plaintiff who had waited seven years to make a claim for liquidated dividends. The Court refused to allow the action to proceed because "[n]othing could be clearer than that plaintiff is guilty of inexcusable delay. All its loss could have been prevented had it not slept on its rights...Plaintiff cannot complain because it has been visited with the consequence of its inexcusable delay." *See also Peters v. Joseph Obert Co.*, 317 Pa. 569, 177 A. 811, 812 (1935) (affirming defense judgment based on laches where plaintiff had waited ten years "to seek enforcement of his alleged rights;" such delay was "inexcusable."); *In re: Roberts' Estate*, 309 Pa. 389, 164 A. 57, 58 (1932) (affirming dismissal where plaintiff waited almost ten years to contest the validity of a will; observing that "[i]t will not do for [plaintiff] to come into court at this late date...Appellant has slept on her rights and cannot be heard to complain now.").

On the foregoing basis – a delay of more than thirty years in asserting claims that were actually known to, and certainly not hidden from, the plaintiff – the Complaint should be dismissed on the basis of laches. After thirty years of silence, this lawsuit simply comes too late.

## V. The Claim for Fraudulent Misrepresentation Should be Dismissed.

Plaintiff's claim for fraudulent misrepresentation should be dismissed on the additional ground that the Complaint fails to state a claim upon which relief can be granted, and because the complaint does not satisfy the heightened pleading requirements specified by Rule 9(b). *See* Fed.R.Civ.P. 9(b).

11

To state a claim for fraudulent misrepresentation, the Complaint must allege facts that, if true, would establish: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance." *Porreco v. Porreco*, 571 Pa. 61, 811 A.2d 566, 570 (2002). Further, Rule 9(b) requires that all allegations of fraud "shall be stated with particularity." The Complaint here fails in both respects.

First, the Complaint fails to state a claim for fraudulent misrepresentation. Plaintiff's claim is summed up by the allegations contained in paragraph 14, to wit: "[T]he defendants made express statements to Sammy that in order to continue as a member of the O'Jays he had to agree that he could only seek payment from Levert and Williams for his 'services.'" *See* Complaint at ¶ 14. The Complaint characterizes these as "false statements" (*id.*) and complains that "defendants induced [plaintiff] to perform and record for the O'Jays under the terms of the 1977 contract while at the same time forcing him to solely 'look' to Levert and Williams for payment of his services as a recording artist." *Id.* ¶ 15.

Even if true, those allegations do not state a claim for fraudulent misrepresentation. The Complaint does not identify a single statement – material or otherwise – by any of the PIR Defendants that was not true when made. Rather, the Complaint simply takes issue with the agreement among all the parties that Mr. Strain would look only to defendants Levert and Williams for the payment of any royalties to which he might become entitled. *See generally* Complaint. In the absence of an allegation of a misstatement of a material fact, the Complaint does not state a claim for fraudulent misrepresentation against any of the PIR Defendants. Further, the only statements that plaintiff alleges were made allegedly occurred at the time these

12

contracts were executed, approximately thirty years ago. Plaintiff's fraudulent misrepresentation claim is therefore barred by the two year statute of limitations. And, having failed to identify *any* allegedly false statement, the Complaint does not allege fraud with particularity. Accordingly, plaintiff's claim for fraudulent misrepresentation should be dismissed.

## VI. Plaintiff's Claims Against Kenneth Gamble, Chuck Gamble, and Leon Huff Should Be Dismissed.

Plaintiff has asserted claims against Kenneth Gamble, Chuck Gamble and Leon Huff, but it fails to allege any specific wrongdoing by any of them in their individual capacities. *See generally* Complaint. Instead, the implication of the Complaint is that they are liable to the plaintiff because of their relationships with Assorted Music, Inc., Philadelphia International Records and Gamble-Huff Productions. But "there is a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Indus. Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893, 895 (1995) (citing *Wedner v. Unemployment Board*, 296 A.2d 792, 794 (Pa. 1972)).

Any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception...Care should be taken on all occasions to avoid making the entire theory of corporate entity . . . useless.

*Id.* Thus, courts applying Pennsylvania law consider such issues as "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud" in determining whether to pierce a corporate veil. *Lumax, supra,* at 895 (citing *Kaites v. Dept. of Environmental Resources*, 529 A.2d 1148, 1151 (Pa. 1987)) (internal citations omitted). Applying these factors, the Supreme Court of Pennsylvania stated in *Lumax* that "[t]he holding in this case well illustrates the sanctity of the corporate structure in Pennsylvania. The corporate veil will not be pierced in this jurisdiction absent the factors of the sort expressed in *Kaites, supra*." *Lumax, supra*, at 895-96.

13

In our case, the plaintiff has not made a single allegation that would support his evident effort at veil piercing. Accordingly, because the Complaint does not allege any wrongful conduct by defendants Gamble, Huff and Gamble in their individual capacities, the Complaint should be dismissed as to each of them.

## Conclusion

For the foregoing reasons, the PIR Defendants respectfully request that each count of the Complaint be dismissed with prejudice.

Respectfully submitted,

/s/

Denis J. Lawler (Bar No. 17154)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel: (215) 569-5500
Fax: (215) 569-5555
Email: lawler@blankrome.com

*Counsel for the PIR Defendants*

Dated: April 26, 2007

14

# EXHIBIT "A"

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (hereinafter referred to as
the "Agreement") is entered into as of the 1st day of
May , 1977 by and between GSW & E, Inc. an Ohio corpor-
ation (hereinafter referred to as the "Corporation"), and
Sammy Strain (hereinafter referred to as "Employee"), upon
the terms and conditions as hereinafter set forth:

1.    Employment.

Corporation hereby engages and employs Employee to
render his exclusive services to Corporation as a member of
The O'Jays singing group, as a musical recording and per-
forming artist, for any and all purposes, including but not
limited to making records and performing on concert tours,
as a composer and writer, as an actor and performer in
motion pictures and television, and in all other areas and
fields throughout the entertainment and leisure time indus-
tries except as an actor and performer in commercial adver-
tisements and endorsements, upon and subject to the terms
and conditions herein set forth.  Employee hereby accepts
such employment and agrees to keep and perform all of the
duties, obligations and agreements assumed and entered into
by him hereunder.

2.    Term.

Subject to the terms and provisions hereof, and
the faithful performance by Employee of his employment, as
herein defined, the period of Employee's employment here-
under shall commence as of the date hereof, and shall con-
tinue until October 14, 1978; thereafter, Employee shall, at
the Corporation's option, render services to the Corporation

a final and ninth period to end on or before March 3I, 1983
("option periods") under the same terms and conditions set
forth herein. Each option shall be deemed automatically
exercised unless written notice is given to Employee by
Corporation not later than ten (10) days prior to the expira-
tion of the immediately preceeding current option period of
Corporation's election not to exercise such option.  If
Corporation so gives notice that it desires not to exercise
any such option, this Agreement shall terminate.  If the
Corporation fails to so exercise any such option, this Agree-
ment shall terminate on the last day of the initial term or
of the then current option period, as the case may be.

3.    Services.

(a)    Employee is hereby employed upon an active
basis subject to the supervision and direction of the Cor-
poration's Board of Directors, and subject to the terms and
conditions herein set forth, to render services as set forth
in Paragraph 1 hereof in an artistic and creative capactity
as and when requested by Corporation for Corporation.
During the term hereof, Employee agrees not to accept any
employment from any other person or entity or, (except
pursuant to the provisions hereof), otherwise engage in any
activity except as consented to in writing by Corporation.
Further, any such employment with such other person or
entity which is permitted by Corporation shall be subject to
and subordinate to Employee's obligations to Corporation and
subject to Employee's availability as determined by Corpora-
tion.  Corporation shall have the right to "loan-out"
Employee's services to any other person or entity subject to

2.

its obligation hereunder to pay to Employee his compensation
as hereinafter provided.

(b)   Employee agrees to render his services as
called for hereunder to the Corporation and/or to such sub-
sidiary and affiliated entities as the Corporation shall
designate, on an exclusive basis and to devote the necessary
time, attention, skills and efforts in connection with the
Corporation's business and to Employee's employment here-
under; to comply promptly and faithfully with all instruc-
tions, directions, requests, rules and regulations made and
issued by Corporation; to perform his services conscientious-
ly and to the full limit of his ability at all times and
wherever required and desired by Corporation and as instructed
by Corporation in all matters including those involving
artistic taste and judgment; to perform faithfully such
duties and exercise such powers from time to time as Cor-
poration may prescribe.  Employee specifically agrees that
all of his activities as an employee shall be in conformity
with all present and future policies, rules, regulations and
directions of the Corporation.  Employee represents and
warrants that he is free to enter into this Agreement and
that the execution of this Agreement, and the performance of
the terms and conditions hereof, will not violate any con-
tract, agreement, document or understanding to which Employee
is a party or to which he may be bound and that the execu-
tion of this Agreement and the performance of the terms and
conditions hereof by Employee will not subject the Corpora-
tion to any warranted or justifiable claims, liabilities or
litigation; Employee agrees to indemnify the Corporation and
hold it harmless against any such claims, liabilities or

3.

litigation, regardless of whether warranted or justifiable
or not, including any attorneys' fees and other costs in-
curred in connection therewith. Notwithstanding the fore-
going, this Agreement shall not be construed to prevent
Employee from having investments and devoting his time to
such personal matters that may require his attention so long
as such activities shall not interfere with the performance
of his services as required under this Agreement.

4.    Compensation.

       As compensation for the performance by Employee of
all of his obligations hereunder and for all rights herein
granted and/or agreed to be granted to the Corporation here-
under, the Corporation agrees to pay and/or cause to be paid
to Employee, and Employee agrees to accept, a salary of
Twenty Thousand Dollars.($20,000.00) per year, payable
monthly after first deducting therefrom all amounts as
hereinafter provided. Except as otherwise provided herein,
Employee shall not be entitled for the performance of his
services hereunder to any other income, salary, royalties or
profits, or monies from any source whatsoever. Employee
agrees that the Corporation may, as Employee's employer,
deduct and withhold from the compensation payable to Employee
hereunder the amounts required to be deducted and withheld
by the Corporation as Employee's employer under the pro-
visions of any statute, regulation, ordinance or order and
any and all amendments thereto requiring the withholding or
deduction of compensation. In the event that the Corpora-
tion makes any payments or incurs any charges for Employee's
account, the Corporation shall have the right and Employee
hereby authorizes the Corporation to deduct from any

compensation payable to Employee hereunder any charges so

paid or incurred by the Corporation, but such right of
deduction shall not be deemed to limit or exclude any other
rights of credit or recovery or any other remedies the
Corporation otherwise may have. Nothing hereinabove set
forth shall be deemed to obligate the Corporation to make
any such payments or incur any such charges. If it is
determined that any such deduction hereinabove described is
unauthorized, the Corporation agrees to reimburse Employee,
it being agreed, however, that notwithstanding the deter-
mination that any deduction was unauthorized, the making of
such deduction shall not be deemed to be a breach of the
Corporation of any of its obligations to Employee hereunder.

5.  Appointment as Officer or Director.

The Corporation is under no obligation to appoint
Employee as an officer and/or director of the Corporation.
If Employee is appointed as an officer and/or director of
the Corporation, Employee agrees to serve in such capacity
or capacities without any additional compensation.

6.  Insurance.

The Corporation may in its discretion and at any
time apply for and procure as owner and for its own benefit,
insurance on Employee's life, or any other insurance, such
as health or accident insurance, in such amounts and in such
form or forms as the Corporation may choose.  Employee shall
have no interest whatsoever in any such policy or policies,
but shall, at the request of the Corporation, submit to such
medical examinations, supply such information, and execute
such documents as may be required by the insurance company
or companies to whom the Corporation has applied for such

5.

7.    **Vacations.**

Employee shall be entitled to an annual vacation,
to be taken at such time or times mutually acceptable to
Corporation and Employee, of the duration accorded to other
employees of the Corporation who are neither officers nor
directors of the Corporation and who shall have been employed
by the Corporation for a similar period of time.

8.    **Death During the Term Hereof.**

If Employee dies during his employment hereunder,
the Corporation shall pay to the Estate of Employee the
compensation which would otherwise be payable to Employee up
to the date of his death.

9.    **Uniqueness.**

It is distinctly understood and agreed that the
services to be performed by Employee hereunder, and the
rights and privileges herein granted to the Corporation by
Employee, are of a special, unique, unusual, extraordinary
and intellectual character which gives them a peculiar value,
the loss of which cannot be reasonably or adequately compen-
sated in damages in an action at law, and that a breach by
Employee of any of the terms contained herein will cause the
Corporation irreparable injury and damage.  Employee expressly
agrees that the Corporation shall be entitled to specific
performance of this Agreement, and to injunctive or other
equitable relief to prevent a breach hereof.  Resort to such
equitable relief, however, shall not be construed to be a.
waiver of any of the rights or remedies which the Corporation
may have against Employee, for damages or otherwise.

6.

## 10.   Grant of Rights.

(a)  Employee hereby grants, transfers and sets
over to the Corporation, and the Corporation shall be en-
titled to and shall own solely and exclusively, forever and
without limitation, and for all purposes, each and every and
all rights and interests of any and every kind and character
whatsoever in and to all of the results and proceeds of
Employee's services hereunder (including all rights through-
out the world of production, manufacture, recordation and
reproduction by any art or method, copyright, trademark and
patent); whether such results and proceeds consist of literary,
dramatic, musical, motion picture, mechanical or any other
form of works, themes, ideas, compositions, creations or
products.  In the event the Corporation shall desire to
secure separate assignments of any of the foregoing, Em-
ployee agrees to execute such assignments (in such form and
content as the Corporation shall determine) upon the Cor-
poration's request. The Corporation shall have the further
exclusive right to use and display Employee's name, voice
and likeness for promotion, advertising and other purposes
during and throughout the term of employment, and non-
exclusively thereafter in connection with all of Employee's
services hereunder, or the results and proceeds thereof.

(b)  Employee agrees and acknowledges that he does
not and shall not have any right, title or interest of any
kind or character whatsoever in or to the name, The O'Jays,
or such other name as Corporation shall select with respect
to the rendition of services by Employee hereunder, and the
Employee acknowledges that he shall have the right to use
any such name only in connection with the rendition of his

7.

services hereunder and only as and when directed by Corpora-
tion.

11.   Living Expenses.

        The Corporation will pay Employee living expenses
in the amount of One Hundred Fifty Dollars ($150.00) per
week for each complete week during which Employee shall
render his services hereunder in connection with concert
appearances outside of Los Angeles and its environs. Except
as otherwise provided herein, Employee shall neither receive,
nor be reimbursed for, any expenses of any nature whatsoever.

12.   Morals.

        Employee agrees that he will conduct himself with
due regard to social conventions and public morals and
decency and will not commit any act or become involved in
any situation or occurrence or make any statement tending to
degrade himself in society or to bring Employee into public
disrepute, contempt, scandal or ridicule, or tending to
shock, insult or offend the community or any organized group
therein or tending to reflect unfavorably upon the Corpora-
tion. In the event that Employee shall fail to comply with
the provisions hereof, the Corporation shall have the right
to terminate this Agreement by giving written notice thereof
to Employee which such notice shall be effective immediately.
Such notice shall be without prejudice to any other remedy
to which the Corporation may be entitled either at law, in
equity, or under this Agreement.

13.   Suspension and Termination of Agreement by the
Corporation.

        In the event Employee is prevented from performing
his services hereunder in accordance with the terms and

8,

(hereinafter referred to as "Disability"), or in the event
the Corporation is unable to conduct its business, by virtue
of governmental regulation or order, or by strike or war, or
by fire, earthquake, hurricane, or by other act of God, or
other calamity (declared or undeclared) or because of other
similar or dissimilar causes beyond the control of the
Corporation (hereinafter referred to as "Force Majeure"), or
in the event Employee wilfully, negligently or otherwise
fails to meet any of his obligations in accordance with the
terms and provisions hereof (hereinafter referred to as
"Default"), the Corporation shall have the right to suspend
the operation of this Agreement or to terminate this Agree-
ment by giving written notice thereof to Employee, which
such notice shall be effective immediately, such termination
to remain effective forever and such suspension to remain
effective for the duration of said Force Majeure, Disability,
and/or Default or such period of time as the Corporation
specifies. During a suspension, Employee shall remain ob-
ligated to render services exclusively for the Corporation.
In the event of a suspension of the operation of this Agree-
ment or termination of this Agreement, as aforesaid, for
reasons other than a Default, Employee shall be paid his
regular compensation earned prior to the date of suspension
or termination, as the case may be, and, upon such suspen-
sion or termination, all obligations of the Corporation
hereunder shall cease. In the event of a suspension of
the operation of this Agreement or termination of this
Agreement, as aforesaid, such suspension or termination
shall be without prejudice to any other remedy to which the

9.

Corporation may be entitled either at law, in equity or
under this Agreement.

14.   Waiver.

No waiver by the Corporation of any breach of any
term or provision of this Agreement shall be construed to be
a waiver of any proceeding or succeeding breach of the same
or any other term or provision hereof. The Corporation's
various rights and remedies hereunder shall be construed to
be cumulative and no one of them is exclusive of any other
or of any right or remedy allowed by law.

15.   Indemnification.

In addition to those representations, warranties
and indemnities made by Employee in this Agreement and not
in limitation thereof, Employee shall expressly indemnify
and hold harmless the Corporation from all liability from
loss, damage, claims or injury to persons or property result-
ing from the negligence or misconduct of Employee.

16.   Notices.

All notices and payments to be given hereunder
must be in writing and shall be given by the parties hereto
only in one of the following ways:  (1) by personal delivery;
or (2) by addressing them as indicated below, and by deposit-
ing them registered or certified mail, postage prepaid in the
governmentally sanctioned official mail system, airmail, if
the address is outside of the state or country in which such

10.

to a telegraph or cable company. If so delivered, mailed,
telegraphed or cabled, such notices shall, except as herein
expressly provided, to the contrary, be conclusively deemed
to have been given when personally delivered or on the date
of delivery to the telegraph or cable company or on the date
of mailing, as the case may be. The addresses of the parties
shall be those of which the other party actually receives
written notice and until further notice are:

| | |
|---|---|
| If to Corporation: | GSW & B, Inc.<br>12608 Miles Avenue<br>Cleveland, Ohio 44105 |
| With a copy to: | Wyman, Bautzer, Rothman & Kuchel<br>Two Century Plaza, 14th Floor<br>2049 Century Park East<br>Los Angeles, California 90067<br>Attention: Gary L. Gilbert, Esq. |
| If to Employee: | Sammy Strain<br>1004 North Spaulding Avenue, #4<br>Hollywood, California 90046 |

17.   Miscellaneous.

(a)  Nothing contained in this Agreement shall be
construed to require the commission of any act contrary to
law and wherever there is any conflict between any provision
of this Agreement and any present or future statute, law,
governmental regulation or order or ordinance contrary to
which the parties have no legal right to contract, then the
latter shall prevail, but in such event the provision or
provisions of this Agreement affected shall be curtailed and
limited only to the extent necessary to bring it or them
within legal requirements.

(b)  This Agreement constitutes the entire agree-
ment between the parties hereto and shall supersede any and
all prior written or oral agreements between the Corporation

11.

and Employee relating to the subject matter hereof and cannot
be amended or modified except by written instrument signed
by the parties hereto. Employee acknowledges that he has not
executed this Agreement in reliance upon any representation
or promise made by the Corporation or any representation of
the Corporation, except as expressly provided for in this
Agreement. This contract shall not become effective until
signed by Employee and countersigned by the Corporation's
duly authorized officers.

(c)  This Agreement shall be deemed to have been
made in the State of Ohio, and its validity, construction  .
and effect shall be governed by the substantive laws of the
State of Ohio. Notwithstanding the foregoing, the parties
hereto agree to submit to the jurisdiction of any court of
competent jurisdiction.

(d)  The Corporation shall have the right to
assign this Agreement, and to delegate all of its rights,
duties and obligations hereunder, whether in whole or in
part, to any parent, affiliate, successor or subsidiary
organization or company of the Corporation. Employee agrees
that this Agreement is personal to him and may not be assigned
by him.

(e)  If any portion of this Agreement shall be,
for any reason, invalid or unenforceable, the remaining        "
portion or portions shall nevertheless be valid, enforceable
and carried into effect, unless to do so would clearly
violate the present legal and valid intentions of the parties
hereto.

(f)  If any action at law or in equity is necessary
to enforce or interpret the terms of this Agreement, the

12.

prevailing party shall be entitled to reasonable attorneys'
fees, costs, and necessary disbursements in addition to any
other relief to which he may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed
this Agreement the day and year first hereinabove written.

GSW & E, INC.

By _____
       Edward W. Levert

By _____
       Walter Williams
       "Corporation"

_____
       Sammy Strain
       "Employee"

# EXHIBIT "B"

ASSORTED MUSIC INC , O/B/S Phila Internat'l Records

~~Gamble-Huff Productions~~
309 South Broad Street
Philadelphia, Pennsylvania   19107

Gentlemen:

Reference is made to a certain agreement dated March [15,] 1977 between you and [Eddie Levert and Walter Williams] jointly doing business as [THE O'JAYS] (hereinafter called [THE O'JAYS] ) relating to my exclusive services as a recording artist ("said agreement").

In order to induce you to enter into said agreement and to pay a good valuable consideration therefor, I hereby agree as follows:

1. I hereby specifically guarantee the performance by ["THE O'JAYS"] of all of the warranties and representations and covenants made in said agreement. I hereby make all of the warranties and representations made to you in said agreement, grant you all of the rights and remedies therein granted to you and agree to perform all of the obligations therein undertaken to be performed for you and undertake to be bound thereby as though I was a party to said agreement. I agree that you shall have the right in addition to any other remedies available to you at law or in equity or by reason of this agreement or said agreement to specifically enforce said agreement against me. No notice need be given to me of any modification or waiver of the provisions of said agreement for the purposes of your enforcing said agreement or this agreement against me.

2. Without limiting any of the rights granted to you in the said agreement, I hereby grant you the right to use and publish and to permit others to use and publish my name, likeness and all biographical material concerning me and to permit others to write and publish articles concerning me for advertising or trade purposes in connection with the sale and exploitation of my records.

3. I agree that I will look solely to [THE O'JAYS] for the payment of all monies payable to me by reason of my rendering my services in accordance with said agreement, and I agree that you shall have no responsibility to me therefor whatsoever. No breach by [THE O'JAYS] of any agreement or agreements which I may now or from time to time have with [THE O'JAYS] shall be sufficient cause for my failure or refusal to fully perform for you in accordance with the said agreement and this agreement. [Should any dispute arise between me and THE O'JAYS , you shall, upon notice by me, sent to you by registered mail, withhold the payment of all sums due and becoming due to THE O'JAYS pursuant to said agreement pending a determination of such dispute. No failure on your part to make any payment to THE O'JAYS by reason of such withholding shall be deemed to be a breach of said agreement. Should THE O'JAYS fail or refuse to produce recordings by me for you pursuant to said agreement, you shall have the right to designate the producers of such recording who shall render their services at the expense of THE O'JAYS , and I shall render my services with such producers directly for you.]

4. I agree to fully render any performances for you and [THE O'JAYS] in accordance with said agreement for so long as said agreement shall be in effect. I further agree that for so long as said agreement shall be in effect I will exclusively render my performances for you in connection with the production of phonograph records, and I will not perform in any capacity whatsoever (individually or as part of a group or otherwise) for any other person, firm or corporation for the purpose of making phonograph records.

5. In the event of the breach of any term hereof or of said agreement by me, I agree that you shall be entitled to injunctive relief in addition to any other rights or remedies available to you. It is agreed that my services for the purpose of recording phonograph records pursuant to said agreement and this agreement are of a special, unique and extraordinary character.

6. I warrant and represent that I have the right to enter into this agreement, and that I and [THE O'JAYS] have the right to grant you all of the rights granted in said agreement and in this agreement, and that neither this agreement nor said agreement nor any performance of ours thereunder shall be in violation of the rights of any third party.

7. I agree to indemnify you and hold you harmless from and against any liability, loss, damage, cost or expense including reasonable legal fees paid or incurred by you by reason of any breach by me or THE O'JAYS or failure of the covenants, representations or warranties contained herein or in said agreement.

8. You shall have the right to secure insurance with respect to me for your own benefit. In this connection, I agree to make myself available for physical examinations by a physician as and when reasonably requested to do so and to complete such questionnaires and other documents which you or any insurance carrier may from time to time require in connection with securing and maintaining such insurance.

9. The foregoing shall bind the undersigned individuals jointly and individually and wherever the first person singular is used and it shall be deemed to be the first person plural, as well, to effectuate this intention.

If the foregoing is in accordance with your understanding, please sign below.

Very truly yours,

SAMMY STRAIN

AGREED TO:

Assorted music INC   D/B/s Phila International Records
CABLE HEAT PRODUCTIONS

By:

AGREED TO:

EDDIE LEVERT

WALTER WILLIAMS
d/b/a "THE O'JAYS"

# EXHIBIT "C"

| | |
|---|---|
| SAMMY STRAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-734 |
| vs. | ) |
| | ) |
| EDDIE LEVERT, WALTER WILLIAMS, | ) |
| O'JAYS INC., PHILADELPHIA | ) |
| INTERNATIONAL RECORDS, ASSORTED | ) |
| MUSIC, INC., GAMBLE-HUFF PRODUCTIONS, | ) |
| KENNETH GAMBLE, LEON HUFF, | ) |
| CHUCK GAMBLE | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF LEON HUFF

I, Leon Huff, depose and state as follows:

1.  My name is Leon Huff. I am over the age of eighteen, am competent to testify,

and have personal knowledge of the matters set forth herein.

2.  I am a resident of the State of New Jersey. My home address is as follows: 9

Rickland Drive, Sewell, New Jersey 08080. My wife and I have resided at this address since

2004, when we acquired the property.

I swear under the penalties of perjury that the matters stated herein are true and accurate.

Dated: _4-23-07_

_Leon a. Huff_
Leon Huff

## CERTIFICATE OF SERVICE

I, Lisa F. Troilo, hereby certify that I am an employee of Blank Rome LLP, as secretary to Denis James Lawler, Esquire, and that on the $\mathcal{L}$ 6th day of April , 2007, I did cause to be served a true and correct copy of the foregoing Defendants Philadelphia International Records, Assorted Music, Inc., Gamble-Huff Productions, Kenneth Gamble, Leon Huff and Chuck Gamble's Motion to Dismiss Complaint, together with Memorandum of Law in support thereof, the original of which was electronically filed today, via United States First Class Mail, postage prepaid, upon the following:

Robert T. Vance, Jr., Esq.
Law Offices of Robert T. Vance, Jr.
100 S. Broad Street, Suite 1530
Philadelphia, PA 19110

Charles A. Whittier, Esq.
The Whittier Law Firm, P.C.
233 Broadway, Suite 531
New York, NY 10279

Rosalind R. Ray, Esq.
Law Offices of Rosalind R. Ray PLLC
6856 Eastern Avenue, NW #208
Washington, D.C. 20012

Philip S. Asbury, Esq.
Philadelphia International Records
The Avenue of the Arts
309 South Broad Street
Philadelphia, PA 19107

LISA F. TROILO